UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| RUHI REIMER, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 23-CV-597-JPS |
| KOHL'S, INC., | **ORDER** |
| Defendant. | |

Plaintiff Ruhi Reimer ("Plaintiff") sues Defendant Kohl's, Inc. ("Defendant") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") and the Virginia Telephone Privacy Protection Act, Va. Code § 59.1-510 (the "VTPPA"). ECF No. 14. Defendant moves to partially dismiss Plaintiff's first amended complaint. ECF No. 18. For the reasons set forth below, the motion will be denied.

1. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility

requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)).

**2.      BACKGROUND**

In early 2022, Plaintiff provided his cellular telephone number to Defendant to receive promotional text messages. ECF No. 14 at 3. After receiving some promotional text messages, Plaintiff decided that he no longer wanted to receive Defendant's promotional text messages. *Id.* In May 2022, August 2022, and October 2022, Plaintiff informed Defendant in writing that he no longer wished to receive telephonic communications from Defendant, including text messages, and requested a copy of Defendant's "Do Not Call Policy." *Id.* at 3–4. After each writing, Defendant continued to send Plaintiff promotional text messages. *Id.* Plaintiff asserts that Defendant sent at least seventy-four unwanted text messages after his initial written request in May 2022. *Id.* at 4. Defendant never sent Plaintiff its "Do Not Call Policy." *Id.* At all times, Plaintiff's cellular telephone number was registered on the National Do-Not-Call Registry. *Id.*

Plaintiff brings three claims for relief. First, he alleges a putative class claim under the TCPA ("Count I"). *Id.* at 7. In Count I, Plaintiff asserts that Defendant violated 47 C.F.R. § 64.1200(c)(2) (the "DNC Provision"), "an implementing regulation promulgated by the Federal Communications Commission ('FCC') to enforce the do-not-call provision of the [TCPA]," by sending Plaintiff promotional text messages after Plaintiff requested that they cease and while Plaintiff's cellular telephone number was registered on the National Do-Not-Call Registry. *Id.* at 7–8; ECF No. 19 at 1. Plaintiff claims that "Defendant does not maintain adequate procedures or protocols

to ensure that it does not send promotional text messages to phone numbers that are registered on the National Do-Not-Call Registry." ECF No. 14 at 8.

Second, Plaintiff brings an individual claim under the TCPA ("Count II"). *Id.* at 9. In Count II, Plaintiff asserts that Defendant violated the implementing regulation set forth at 47 C.F.R. § 64.1200(e)(2)(i) "by failing to deliver its written Do-Not-Call policy to Plaintiff despite Plaintiff's multiple demands." *Id.* Finally, Plaintiff brings an individual claim under the VTPPA ("Count III"). *Id.* at 10. In Count III, Plaintiff alleges various violations of the VTPPA, largely based on his continued receipt of promotional text messages after he requested that they cease. *Id.* at 10–12.

3. ANALYSIS

Defendant moves to dismiss Count I on the basis that the DNC Provision does not apply to text messages. ECF No. 19 at 1. The FCC promulgates the TCPA's implementing regulations. 47 U.S.C. § 227(c). One such regulation, the DNC Provision, prohibits certain telephone solicitations to people who have registered their telephone numbers on the National Do-Not-Call Registry. 47 C.F.R. § 64.1200(c)(2). The DNC Provision presently reads, in pertinent part:

> A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

*Id.* Section 64.1200(f)(15) presently defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."

Section 64.1200(e) presently applies the DNC Provision to "any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

In an April 7, 2023 Notice of Proposed Rulemaking titled "Targeting and Eliminating Unlawful Text Messages" (the "Notice"), the FCC "[sought] comment on extending Do-Not-Call protections to marketing text messages." 88 Fed. Reg. 20800, 20801 (to be codified at 47 C.F.R. pt. 64). The Notice explains that the FCC "proposes to clarify that the National Do-Not-Call Registry protections apply to text messages as well as voice calls and to codify this clarification in the [FCC's] rules." *Id.* at 20802. It continues, stating that "[a]lthough the [FCC] has stated that text messages are calls for [TCPA] purposes, it has not explicitly included text messages in the codified DNC rules that protect wireless phone subscribers by requiring prior express invitation or permission in writing for calls to wireless numbers on the National DNC Registry." *Id.* The FCC proposes amending § 64.1200(e) to apply the DNC Provision "to any person or entity making telephone solicitations or telemarketing calls *or texts* to wireless telephone numbers." *Id.* at 20804 (emphasis added).

Defendant asserts that "[o]ther documents issued by the FCC contemporaneously" with the Notice corroborate this reading. ECF No. 19 at 5. For example, the FCC's March 17, 2023 "Report and Order and Further Notice of Proposed Rulemaking," states that "while the [FCC] included both wireless and wireline numbers in the DNC protections, it has not explicitly included text messages in the DNC rules." ECF No. 20-1 at 13.[1]

---

[1]*See also In re: Targeting and Eliminating Unlawful Text Messages*, CG Docket Nos. 21-402, 02-278, Report and Order and Further Notice of Proposed

The FCC's February 23, 2023 fact sheet on the matter states that the FCC "propose[s] to *extend* the National DNC Registry protections to text messages" because the FCC "has never stated that text messages are subject to DNC protections." *Id.* at 76 (emphasis added).[2]

As a result, Defendant argues that "at present, [the DNC Provision] applies to solicitation telephone calls to registered individuals *but does not* apply to text messages." ECF No. 19 at 5. Further, "against the backdrop of there being *no* previous FCC regulation on the issue, the FCC's proposed amendment can only be forward-looking." *Id.* at 7.

In response, Plaintiff insists that the Notice "is intended to *clarify* and remove all doubt on whether text messages are covered by the TCPA's DNC provision." ECF No. 23 at 6. Plaintiff relies on § 64.1200(f)(15)'s and the TCPA's definitions of "telephone solicitation" as "a telephone call or *message*," case law predating the Notice holding that the DNC Provision extends to text messages, and case law holding that text messages are "calls" for purposes of a separate provision of the TCPA. *Id.* at 4–5.

The dispositive question is indeed whether the Notice functions as a clarification or a substantive change to the law. An agency's "rule simply clarifying an unsettled or confusing area of the law . . . does not change the law, but restates what the law according to the agency is and has always been." *Clay v. Johnson*, 264 F.3d 744, 749 (7th Cir. 2001) (quoting *Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir. 1993), *overruled on other grounds by Johnson*

---

Rulemaking at 6-7 (adopted Mar. 16, 2023), *available at* https://www.fcc.gov/documents (last visited Sept. 13, 2023) (emphasis added).

[2]*See also In re: Targeting and Eliminating Unlawful Text Messages*, CG Docket Nos. 21-402, 02-278, FCC Fact Sheet at 24 (issued Feb. 23, 2023), *available at* https://www.fcc.gov/documents (last visited Sept. 13, 2023).

*v. Apfel*, 189 F.3d 561 (7th Cir. 1999) and citing *First Nat'l Bank of Chi. v. Standard Bank & Tr.*, 172 F.3d 472, 478 (7th Cir. 1999)). "In determining whether a rule is a clarification or a change in the law, the intent and interpretation of the promulgating agency as to the effect of the rule is certainly given great weight.[3] They are not, however, dispositive." *Pope*, 998 F.2d at 483.

As Plaintiff points out, the Notice states that its purpose is "to clarify" that the DNC Provision applies to text messages and "to codify this clarification." 88 Fed. Reg. 20800, 20802 (Apr. 7, 2023) (to be codified at 47 C.F.R. pt. 64). And as Defendant notes, the Notice and accompanying documents also state that the FCC seeks to "extend[]" the DNC Provision to text messages, and the Notice proposes to add the phrase "or texts" to § 64.1200(e). *Id.* at 20801, 20804.

Where an agency uses contradictory language that suggests a rule may be either a clarification or a substantive change to the law, courts must look below the surface at a number of additional factors.[4] *See, e.g.*, *T-Mobile S., LLC v. City of Roswell*, No. 1:10-CV-1464-AT, __ F. Supp. __, 2023 WL 2563227, at *12 (N.D. Ga. Mar. 17, 2023) (FCC rule's stated purpose was "to clarify *and update*"). In *T-Mobile*, the court, relying on an Eleventh Circuit test that was formulated in part based on *Pope*, held that despite its

---

[3] Notices of proposed rulemaking are entitled to agency deference. *See Abbas v. Selling Source*, No. 09 CV 3413, 2009 WL 4884471, at *5 (N.D. Ill. Dec. 14, 2009).

[4] The cases Defendant cites analyzing prior FCC amendments are not entirely on point, as they do not parse contradictory language used within the same instrument. *See* ECF Nos. 19 at 7–8, 24 at 5 (citing *Roberts v. PayPal, Inc.*, 621 F. App'x 478, 479 (9th Cir. 2015) and *Leyse v. Bank of Am.*, No. 11-7128, 2020 WL 1227410, at *5 (D.N.J. Mar. 13, 2020), *aff'd*, 856 F. App'x 408 (3d Cir. 2021)).

Page 6 of 11
Case 2:23-cv-00597-JPS   Filed 09/21/23   Page 6 of 11   Document 25

contradictory language, the rule at issue substantively changed the law, and thus was not a mere clarification, for several reasons. *Id.* at *13 (citing *Pope*, 998 F.2d 473 and *Heimmermann v. First Union Mortg.*, 305 F.3d 1257, 1260 (11th Cir. 2002)); *id.* at *15.

First, the rule had "far-reaching implications that potentially r[an] afoul" of case law on related issues and "overr[ode] the unambiguous consensus of every other Circuit that has addressed the issue." *Id.* at *13, *14. Second, the rule "reflect[ed] a marked change in direction for the FCC" given approaches the FCC had taken in "slightly different context[s]." *Id.* at *14; *see also Pope*, 998 F.2d at 483 (reviewing the agency's "past administrative practices" and "prior position[s]" in determining whether rule is a clarification or a change in the law). Third, the rule included an effective date, which "is indicative of the FCC's intent for the [rule] to be a substantive rule." *T-Mobile*, 2023 WL 2563227, at *15. Finally, the rule's preamble suggested it was "part of a broader effort to issue a package of new substantive rules based on changed circumstances." *Id.*

Multiple Circuits have adopted tests similar to the Eleventh Circuit's to assess the related issue of whether a rule applies retroactively; those tests call for review of existing case law on the issue, prior practices, reliance, and the like. *See, e.g.*, *Obeya v. Sessions*, 884 F.3d 442, 445 (2d Cir. 2018); *Farmers Tel. Co. v. F.C.C.*, 184 F.3d 1241, 1251 (10th Cir. 1999); *see also* ECF No. 19 at 1 (explaining "exception to the general rule against retroactivity, applicable when an agency's new action merely clarifies regulations that are already in place") (citing *Beller v. Health & Hosp. Corp. of Marion Cnty.*, 703 F.3d 388, 391 (7th Cir. 2012)). Since *Pope*, the Seventh Circuit has made clear that to determine if a rule is a clarification versus a substantive change, courts must "review the regulatory record," with the "strongest indication of a

substantive change [being] inconsistency with a previously stated position." *First Nat. Bank of Chicago*, 172 F.3d at 479 (citing *Pope*, 998 F.2d at 483–84); *see also United Techs. Corp. v. U.S. E.P.A.*, 821 F.2d 714, 718 (D.C. Cir. 1987) (the "test to distinguish between interpretative and legislative rules" asks whether the agency seeks only to "'remind[]' affected parties of existing duties" or to instead "create new law") (quoting *Gen. Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C. Cir. 1984)).

Against this backdrop, the Court is constrained to agree with Plaintiff that the Notice is a clarification and not a substantive change to the law. In an order issued *after* the Notice, the Ninth Circuit held that the DNC Provision and § 227(c) of the TCPA apply to text messages sent prior to the Notice, in 2019 and 2020. *See Hall v. Smosh Dot Com*, Inc., 72 F.4th 983, 986 (9th Cir. 2023) (citing 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(c)(2), and *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)). Countless Circuit and district courts have held the same prior to the Notice. *See, e.g.*, *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1220, 1226 (9th Cir. 2022); *Gulden v. Liberty Home Guard LLC*, No. CV-20-02465-PHX-JZB, 2021 WL 689912, at *5 (D. Ariz. Feb. 23, 2021) ("[N]umerous other district courts . . . have analyzed whether text messages violated § 64.1200(c)(2) based on the texts' contents and purposes and concluded that 'telephone solicitations' are to be interpreted as including text messages.") (collecting cases).[5]

Defendant argues that certain of these cases are distinguishable because the courts relied on separate provisions of the TCPA (namely, the

---

[5]The Court's pretrial order is clear that "[n]o string citations will be accepted." ECF No. 4 at 4. The Court understands why Plaintiff included string citations, *see, e.g.*, ECF No. 23 at 5—to show the uniformity of courts' holdings on the issue—but the Court's pretrial order should be followed to the letter going forward.

"automatic telephone dialing system" or "ATDS" provisions set forth in § 227(b)) or "assumed applicability." ECF No. 24 at 9 (citing *Gulden*, 2021 WL 689912, at *4–5 and *Vallianos v. Schultz*, No. C19-0464-JCC, 2019 WL 4980649, at *3 (W.D. Wash. Oct. 8, 2019)). But regardless of these courts' reasoning(s), the Notice does not have "far-reaching implications that potentially run afoul" of existing case law or "override the unambiguous consensus of every other Circuit that has addressed the issue." *T-Mobile*, 2023 WL 2563227, at *13, *14; *see also Obeya*, 884 F.3d at 445 (analyzing whether rule is "abrupt departure from well-established practice" to determine whether rule is retroactive); *Farmers Tel. Co.*, 184 F.3d at 1251 (same). It is precisely the opposite. Given the landscape of the existing case law, it is wholly clear that the Notice seeks to restate what a potentially confusing area of the law is and has always been, not to change it. *Clay*, 264 F.3d at 749.

The same is true as to the FCC's past positions and administrative practices both in this and other contexts. *See T-Mobile*, 2023 WL 2563227, at *14; *see also Pope*, 998 F.2d at 482. In this context, § 64.1200 explicitly refers to "text messages" in multiple areas outside of the DNC Provision. The only court to squarely analyze a defendant's arguments that the Notice suggests that the DNC Provision does not and never did refer to text messages rejected the argument in part on this basis. *See Pepper v. GVG Cap. LLC*, No. CV H-22-2912, __ F. Supp. __, 2023 WL 3914291, at *3 (S.D. Tex. June 9, 2023). The court reasoned that the bulk of the references in § 64.1200 to "text messages" involve *exceptions* to TCPA provisions; thus, "[t]here [would] be no need to explicitly exempt text messages from a regulation that does not otherwise encompass them." *Id.* (citing *Fla. Right to Life, Inc. v. Lamar*, 273

F.3d 1318, 1327 (11th Cir. 2001) and *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992)).

The Court agrees. By exempting text messages in certain areas of § 64.1200, the FCC has implicitly stated that text messages are already included. In the Notice, by contrast, the FCC now seeks to "explicitly include[]" text messages within the reach of the DNC Provision and to "codify this clarification in the [FCC's] rules." 88 Fed. Reg. 20800, 20802 (Apr. 7, 2023) (to be codified at 47 C.F.R. pt. 64). Other references to "text messages" in § 64.1200 serve to clarify that the word "message" means either a voice call or a text message, *see, e.g.*, § 64.100(a)(9)(i)(E), similar to the Notice's proposed addition of the phrase "or texts" to apply to the DNC Provision. Additionally, and as earlier noted, both the DNC Provision and § 227(c) of the TCPA currently apply, by their terms, to "telephone call[s] or message[s]." The Notice, by adding the phrase "or texts" to apply to the DNC Provision, serves to clarify because its "validity stands or falls on the correctness of the [FCC's] interpretation of [§ 227(c)]" not on the FCC's "judgment as to how best to implement a general statutory mandate." *United Techs. Corp.*, 821 F.2d at 719–20.

As to the FCC's position in slightly different contexts, the parties do not dispute, and courts have uniformly held, that the ATDS provisions in the TCPA and the implementing regulations extend to text messages. ECF No. 24 at 1–2; ECF No. 23 at 5 (collecting cases). Defendant argues that the ATDS provisions are distinguishable because they "specifically reference cellular phones," and that text-based claims under the DNC Provision are "a more recent phenomenon" in light of the U.S. Supreme Court's restriction on the ability to bring ATDS-related claims. ECF No. 24 at 6. However, § 64.1200 has been updated each year since 2018, and sometimes

multiple times a year, with text messages exempted from areas other than the ATDS provisions, reinforcing their implicit inclusion in the reach of the DNC Provision. *See Pepper*, 2023 WL 3914291, at *3.

Finally, the Notice does not appear to include an effective date, and language used in its synopsis, *e.g.*, the effort to "*further* protect consumers from unwanted marketing texts," suggests a desire to ensure current regulations are working effectively. Fed. Reg. 20800, 20802 (Apr. 7, 2023) (to be codified at 47 C.F.R. pt. 64) (emphasis added). Therefore, for all these reasons, the Notice merely restates what the law is and has been, and Defendant's motion must be denied.

### 4. CONCLUSION

For the reasons set forth above, the Court denies Defendant's motion to dismiss Count I of Plaintiff's first amended complaint.

Accordingly,

**IT IS ORDERED** that Defendant Kohl's, Inc.'s motion to partially dismiss Plaintiff Ruhi Reimer's first amended complaint, ECF No. 18, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 21st day of September, 2023.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge